Jones v. Ducktown Sulphur, Copper & Iron Co.

JONES *v.* DUCKTOWN SULPHUR, COPPER & IRON CO.,

LIMITED, *et al.,* and STUART *v.* SAME DEFENDANTS.

(*Knoxville.*    September Term, 1902.)

**1.  APPEAL.  Time of filing oath or bond for.**

The party appealing must cause his appeal bond or oath in lieu thereof, to be *filed* within the time allowed by law—otherwise it is a nullity; and so, when the oath for appeal, though sworn to before the clerk within time, was not marked by him as *filed* until after expiration of time limited for filing—said oath should be treated as a nullity. (*Post, pp.* 382-383.)

Cases cited:   Davis *v.* Wilson, 85 Tenn., 383-386; Andrews *v.* Page, 2 Heisk., 642.

**2.  SUPREME COURT.  Practice—when oath or bond not filed in court below.**

Where the oath for appeal is not filed within time, in court below, the supreme court will, upon proper motion, dismiss the appeal, unless appellant gives bond or takes and files the oath in lieu thereof in this court; or he may file the record for error on the oath; and reasonable time will be allowed him to take either of these steps. (*Post, pp.* 382-383.)

Cases cited:   Wilson *v.* Corry, 1 Lea, 391; Mowry *v.* Davenport, 6 Lea, 83; Adamson *v.* Hurt, 3 Tenn. Cas., 324; Campbell *v.* Boulton, 3 Bax., 354.

**3.  SAME.  Same.  Action at law—what errors corrected.**

An appeal from the circuit court in a case not of an equitable nature is an appeal in error—unlike a broad appeal in chancery—and only errors affecting appellant can be corrected on such appeal. (*Post, p.* 383.)

Case cited in:   Gallena *v.* Sudheimer, 9 Heiskell, 189, 192.

**4. JOINT TORT FEASORS. Declaration. Demurrer.**

When a demurrer is filed to a declaration in an action for damages against alleged joint tort feasors, the question of joint liability must be determined by the case stated in the declaration. (*Post, pp.* 383-386.)

**5. SAME. Who are—Case in judgment.**

Plaintiffs brought their respective actions for damages against two mining companies, as defendants, who are described in the declaration as the "owners" of certain mines, and it is alleged that "they are engaged in the business of mining" and that "they have under their management and control divers mining pits . . . necessary to the conduct of their business . . . and "that the defendants are constantly . . . causing immense quantities of smoke, together with other poisonous vapors and gases to be discharged upon plaintiff's lands," thereby causing the injury complained of. Defendants demurred on the ground that they are improperly joined, in that no joint trespass is averred, and in their brief inform the court that they are separate corporations owning and operating separate and distinct plants, located a considerable distance apart.

HELD: 1st. For the facts upon which the actions are predicated, the court must be governed solely by the face of the declaration. 2d. That the fair and natural construction of the language used in the declaration is that defendants jointly owned the mines, etc., and were jointly operating them and therefore the demurrer should be overruled. (*Post, pp.* 378-382, 383-386.)

**6. SAME. Question reserved.**

Whether two tort feasors can be properly sued together, when their several acts complained of are separate and distinct, not done by collusion, by confederation or as simultaneous acts of wrongdoing, or when they do not sustain to each other any contractual relation, but when their separate and independent acts merely concur in a general result, is a question reserved and not passed on by the court. (*Post, pp.* 385-386.)

**7. HUSBAND AND WIFE. Action for damages to rents of wife's lands.**

A husband is entitled to the rents and profits of his wife's lands owned by her in fee, and without joining her as plain-

Jones v. Ducktown Sulphur, Copper & Iron Co.

tiff, may maintain an action for such injuries to said lands as impair their annual productive value or lessen the rents and profits thereof, accrued up to the date or the suit brought. (*Post, pp.* 386-389.)

Construing:   Act of 1879, ch., 141; Code, sec. 4239 (S); 3343 (M. & V.).

Cases cited:   Guion *v.* Anderson, 8 Humph., 298; Corley *v.* Corley, 8 Bax., 7, 9; Ables *v.* Ables, 86 Tenn., 333; Brasfield *v.* Brasfield, 96 Tenn., 580; Jordan *v.* City of Benwood, 42 W. Va., 312; Dry Dock Co. *v.* Armstrong, (C. C.) 17 Fed. Rep., 216.

### FROM POLK.

Appeal in error from Circuit Court of Polk County. N. Q. ALLEN, Judge.

W. A. GUINN and INGERSOLL & PEYTON, for Jones and Stuart.

JAMES G. PARKS and HOWARD CORNICK, for Companies.

MR. JUSTICE NEIL delivered the opinion of the Court.

These two cases are before the court on declaration and demurrer.   The declaration and demurrer in each are substantially the same, with the exception of the names of the plaintiffs, and with the further exception of an additional ground of demurrer assigned to the second declaration, which will be presently noted. The cases, though distinct in fact, were, because they

involve substantially the same questions, argued in this court as one case, and they will therefore be disposed of in one opinion.

The first count of the declaration in the first case alleges that the Ducktown, etc., Company and the Tennessee Copper Company, are both corporations; that "they were, at the bringing of this suit, and for some time prior thereto had been, the owners, and still are owning, operating, managing, and controlling, certain copper mines and copper mining plants, located, . . . where they are engaged in the business of mining, roasting, and smelting copper ores, and that, for the purpose of such mining operations, defendants have under their management and control divers mining pits, shafts, roadways, elevators," etc., "together with very many roast heaps, furnaces, and other appliances necessary to the conduct of their business aforesaid; . . . that by means of said roast heaps and furnaces the defendants are constantly . . . causing immense . . . quantities of smoke, together with other poisonous vapors and gases, to be discharged upon . . . plaintiff's land, creating both a public and private nuisance : . . by rendering the atmosphere . . . over the lands of plaintiff impure, unhealthful, and unwholesome, by reason of the noxious odors . . . created by . . . the smoke, vapors, and gases aforesaid from the works of defendants, depriving the plaintiff and his family of the sunlight and pure air necessary

to the health and comfort of life, and to the great
annoyance of the plaintiff and his family, greatly
diminishing the desirability of the plaintiff's said
tract of land as a place of residence or habitation,
causing the value of plaintiff's said land to be greatly
depreciated, . . . wholly destroying his orchards,
fruit trees, garden, garden vegetables, and the crops
growing upon said land, together with its timber and
other vegetation," to the plaintiff's damage $500.
The declaration fully describes the land so alleged to
have been injured.

The second count is the same as the first, with the
addition that "the defendants, the Ducktown Sul-
phur, Copper & Iron Company and the Tennes-
see Copper Company, wrongfully, negligently
and illegally built . . . said roast heaps and
furnaces, and wrongfully, negligently and illegally
maintain them, and that as a result of the said de-
fendants' wrongful, negligent and illegal acts afore-
said, and within three years next before the bringing
of this suit, there have been constantly . . . dis-
charged from said roast heaps and from the furnaces
of defendants vast . . . quantities of smoke, to-
gether with other poisonous vapors and gases, which
were carried by air currents upon . . . said land
of the plaintiff, creating both a public and private
nuisance, by rendering the atmosphere," etc.—pro-
ceeding as in the first count.

The declaration in the second case is expressed in

substantially the same terms as above set forth, but contains the following additional averments, viz.: That plaintiff's wife owns the fee in the lands described in the declaration, and that plaintiff owns such interest therein as the law gives him in his wife's fee-simple estate; that during three years next before the filing of the present suit the plaintiff had been living upon this land "as a home and farm for himself and family, and, during his possession of the above lands, has been cultivating the same as a means of support for himself and family."

It is further averred that, as the result of the operations of the defendants in roasting and smelting copper ores, immense volumes of smoke, together with other poisonous vapors and gases, are discharged upon the said lands, rendering the air impure and unwholesome, "depriving the plaintiff and his family of the sunlight and pure air necessary to the health and comfort of life, to the great annoyance of the said plaintiff and his family, greatly diminishing the desirability of the plaintiff's said tract of land as a place of residence and habitation, causing the value of the plaintiff's land to be greatly depreciated, . . . wholly destroying his orchards, fruit trees, garden, garden vegetables, and the crop growing upon his said lands, together with his timber and other vegetation, and otherwise damaging his said land in respect of its use and productiveness as a farm for the support of himself and his family."

The grounds of demurrer common to both declarations are as follows: First. That the declaration does not state a cause of action. Second. That the second count is bad for duplicity, in that two distinct causes of action are set out therein. Third. "That the defendants are sued as joint tort feasors for injuries committed in trespass, but no averment is made that the two defendants conspired in the commission of the injuries complained of, and that, in the absence of a conspiracy or alleged co-operation of these defendants, they are suable separately, and not jointly, and their joinder is a misjoinder in law." Fourth, "no community of interest is alleged against these defendants; no joint trespass is averred; the facts alleged in the declaration repel the idea of a joint trespass; and there is consequently a misjoinder of parties, for the reason that each has a separate and individual defense to the cause of action alleged in plaintiff's declaration. Fifth. "The declaration avers that the matters complained of are both a public and private nuisance, without averring any special injury to the plaintiff other than and beyond that affecting the public generally."

The ground of demurrer specially applicable to the second declaration is as follows: "The wife of the plaintiff, in whom title is alleged, is an indispensable party plaintiff, and the declaration is defective because of her nonjoinder."

The court below overruled the first, second and

fifth grounds of demurrer, but sustained the third and fourth grounds, and also the last ground stated, and dismissed both actions. The plaintiffs have appealed and assigned errors. The defendant has also assigned errors, upon the action of the court in overruling the first, second and fifth grounds.

A preliminary question is made in this court, in the form of a motion to dismiss on the ground that the plaintiffs had taken and caused to be filed their several oaths for appeal after the expiration of the time granted therefor by the circuit judge. We shall dispose of this matter first.

On the 8th day of March an order was entered in the court below allowing the plaintiffs "thirty days to give an appeal bond, or to otherwise comply with the law." Each plaintiff took and subscribed the oath before the clerk on the 5th day of April, which was in time, but the clerk did not mark this oath "filed" until the 10th of April, which was after the expiration of the thirty days. The question presented is whether the mere taking of the oath within time was sufficient, or whether it was also necessary that the plaintiff should have had it marked "Filed" by the clerk. It seems to be clear, under our authorities, that the oath must not only be taken in time, but that it must likewise be filed in time. *Davis* v. *Wilson*, 85 Tenn., 383, 386 (5 S. W., 285). The result, probably would be that the oath was a nullity. *Andrews* v. *Page*, 2 Heisk., 642. But this can be of no practical

Jones v. Ducktown Sulphur, Copper & Iron Co.

benefit to the defendants, because the plaintiffs may still perfect their several appeals by taking the pauper oath or giving bond here (*Wilson* v. *Corry,* 1 Lea, 391; *Mowry* v. *Davenport,* 6 Lea, 83; *Adamson* v. *Hurt,* 3 Tenn. Cas., 424), or may file the record for error on the pauper oath (*Campbell* v. *Boulton,* 3 Baxt., 354). So, while the motion to dismiss must be granted unless the proper steps, as above indicated, be taken, leave will be given the plaintiffs to perfect the appeal by taking those steps within a reasonable time, to be fixed by an order on the minutes of the court.

Assuming that the steps referred to will be taken, we shall, in order to save time, now proceed to dispose of the errors assigned.

1. The defendant's assignment of errors upon the action of the circuit judge in overruling the first, second and fifth grounds of demurrer can not be entertained, because the defendant has prosecuted no appeal. An appeal from the circuit court in a case not of an equity nature is simply an appeal in error, and not like a broad appeal in chancery, and only errors affecting the appellant can be corrected on such an appeal. *Gallena* v. *Sudheimer,* 9 Heisk., 189, 192.

2. The errors assigned by the plaintiffs to the action of the court in sustaining the third and fourth causes of demurrer must be held good, but on this ground: The court, in disposing of a demurrer, must

be governed by the face of the declaration, and can not look outside of it, to information contained in the briefs of counsel. Considering the declaration in each of the cases from this standpoint, it appears that the two defendant corporations are the joint owners of the mines referred to, and are jointly engaged in committing the injuries complained of. They are described as the "owners" of "certain copper mines and copper mining plants located," etc. It is alleged that "they are engaged in the business of mining," etc.; that, for the purpose of such mining operations, "they . . . have under their management and control divers mining pits . . . necessary to the conduct of their business aforesaid; . . . that the defendants are constantly . . . causing immense quantities of smoke, together with other poisonous vapors and gases, to be discharged upon . . . plaintiff's lands." Again, it is averred that these noxious vapors and gases come "from the works of defendants."

The natural construction of this language is that the two corporations together own the mines, furnaces, pits, etc., and are together operating them. The defendants' counsel, in their brief, inform the court that the two corporations are in fact wholly different concerns, that their plants are located a considerable distance apart, and that their mines and all of their operations are wholly separate and distinct. We can not, however, look to defendants' brief

for such information. We must take the face of the declaration itself, and, from a natural and easy construction of it, determine the matter. So construed, it can bear only the meaning which we have above given to it.

Hence it results that there was error in the action of the circuit judge in sustaining the third and fourth grounds of demurrer.

But, in so holding, the court does not desire to be understood as passing upon the merits of the legal question made in defendants' brief, viz., whether two tort feasors can be properly sued together, where their several acts complained of are separate and distinct, not done in collusion, by confederation, or as simultaneous acts of negligence or wrongdoing, or where they do not sustain to each other any contractual relation, as master and servant, principal and agent, or the like, but where their separate and independent acts merely concur in a general result, as where a stream is polluted by two different persons turning sewage into it at different places, independently of each other, or where the air is polluted by the emanations from two different factories or mills operating independently of each other; their separate emanations intermingling in the air, and descending together upon the lands of neighboring owners. The question so stated and illustrated was attempted to be made in the brief and in the discussion at the bar by the learned counsel for defendants, but it could

Cates 1-13

not be properly raised on demurrer to the declaration in either of the cases before the court, as these declarations were drawn.

3. We shall now dispose of the last ground of demurrer—that which was filed solely to the second declaration, and which raised the point that the wife was a necessary party plaintiff. As said in *Guion* v. *Anderson,* 8 Humph., 298, 325, and in *Corley* v. *Corley,* 8 Baxt., 7, 9: "By marriage the husband gains an estate of freehold in the inheritance of his wife, in her right, which may continue during their joint lives, and may, by possibility, last during his own life. He is not, however, solely seised, but jointly with his wife. The technical phraseology of the common-law pleaders to express the interest of the husband in the estate of the wife was 'that the husband and wife are jointly seised in right of the wife.' Doug., 329." It is said that, "if there be a disseisin during coverture, it is a disseisin of the entire joint estate, and that the husband and wife must jointly bring suit to recover the possession." But it is further the law of this State that the husband is entitled to the usufruct, the rents and profits, of the wife's lands owned by her in fee, while the marriage relation continues. However, during the life of the wife he receives these rents and profits as the governor of the family, and for the benefit of himself and the family. He can not contract them away without his wife's consent in writing, nor can they be levied on for his debts;

but having collected such rents, or having lawfully realized the proceeds of the usufruct in money, he has the right to dispose of them at his discretion. Acts 1879, ch. 141; *Ables* v. *Ables,* 86 Tenn., 333 (9 S. W., 692) ; *Brasfield* v. *Brasfield,* 96 Tenn., 580 (36 S. W., 384).

Therefore, we are of opinion that the husband, without joining the wife, has the right to sue for such injuries to the wife's land held in fee by her, as impair its productive value year by year, accrued up to the time of the bringing of his suit, and that this would be the measure of his damages; but that, to recover for injuries beyond these, the wife would have to be joined in the action. We do not think that for an injury merely to crops, or to the rents and profit producing power of the land, it is essential that the wife should be joined. It is, no doubt, often difficult to trace the line between an injury merely to the producing power of the land, and one that is permanent; but the difficulty in the way of accurate definition can not destroy the right that is clear in the husband to realize the rents and profits, and to sue for injuries affecting that right. The right of suit follows necessarily the right of property, and an invasion of that right.

Our attention has not been called to any case directly in point, but the general principle on which the question turns is well recognized. *Jordan* v. *City of Benwood,* 42 W. Va., 312 (26 S. E., 266; 36 L. R.

A., 519, 522; 57 Am. St. Rep., 859); Suth. Dam., 1033, 1034; 1 Add. Torts (marg. p.), 207-209; *Dry Dock Co.* v. *Armstrong* (C. C.), 17 Fed., 216; Sedg. Dam., secs. 72, 74. And in 2 Add. Torts (Wood), sec. 1294, it is said: "If a man marry a woman seised in fee of certain lands and tenements, he gains a freehold interest therein, in right of his wife; and, if he is the actual occupier of them, he is, of course, entitled to sue for all damages done to his beneficial occupation and enjoyment of the property."

In the declaration in the present case, it is averred that the productive power of the lands as a support for the family has been injured by the agencies which the defendants have liberated, and it is also especially averred that the crops on the land have been injured by the same agencies, also other vegetation, also the orchard. Clearly the husband would have the right to sue for injury to the annual crops, also for injury to the grasses otherwise available for the grazing of his cattle, also for the loss of the yearly use of the orchard, and, in short, for whatever injury in rents and profits he may have suffered by reason of the wrongful acts of the defendants, accrued up to the time of the bringing of his suit.

We have restricted the assessment of damages to a recovery for injuries done and damage suffered up to the bringing of the action. This we deem a restriction founded in reason, and one which will do much towards lessening the number of those embar-

Jones v. Ducktown Sulphur, Copper & Iron Co.

rassing inquiries which are likely to arise in an effort to determine when the sole right of action of the husband ends, and the joint right of the husband and wife begins.

It results from the foregoing discussion that the judgment of the circuit court in both causes must be reversed, and the causes remanded for issue and trial.