State v. Willis.

STATE *v.* WILLIS.

(*Knoxville.* September Term, 1914.)

1. **BANKS AND BANKING.** Receiving deposit while insolvent. Indictment.

An indictment for receiving a deposit, knowing the bank to be insolvent, which alleges that the defendant, as cashier of the K. Bank & Trust Company, permitted the reception of a stated amount "on deposit in said bank and corporation," is not demurrable in that it is not alleged that the corporation was a banking institution. (*Post, pp.* 405, 406.)

Case cited and distinguished: State v. Willis, 170 S. W., 1032.

2. **CRIMINAL LAW.** Right to allege error. Persons not appealing. "Appeal."

An "appeal" from a law court is not like a broad appeal in chancery, but is only an appeal in error; it merely suspends the judgment, and no errors can be corrected except those committed against the party prosecuting the appeal or writ of error. (*Post, p.* 407.)

Cases cited and approved: Jones v. Ducktown, etc., Co., 109 Tenn., 375; Gallena v. Sudheimer et al., 56 Tenn., 189.

3. **BANKS AND BANKING.** Constitutional law. Arbitrary classification. Offenses. Receiving deposit by insolvent bank.

Acts 1911, ch. 44, prohibiting any officer or agent, having the control or management of a "bank," from receiving money on deposit, knowing the bank to be insolvent, is not violative of Const. art. 1, sec. 8, prohibiting arbitrary classification, since the word "bank," in view of Acts 1913, ch. 20, sec. 44, defining banks, will be construed to include savings banks, trust companies, and private banks. (*Post, pp.* 407-409.)

Acts cited and construed: Acts 1911, ch. 44; Acts 1913, ch. 20, sec. 44.

State v. Willis.

4. **STATUTES.** Construction. General word.

Where the intent of a statute is clear, general words will be expanded to effectuate that purpose, if necessary. (*Post, pp.* 409, 410.)

Cases cited and approved: . Coal Creek, etc., Co. v. Tenn. Coal, etc., R. C., 106 Tenn., 651; Rose v. Wortham, 95 Tenn., 505.

5. **CONSTITUTIONAL LAW.** Arbitrary classification. Receiving deposits by insolvent bank.

Acts 1911, ch. 44, prohibiting any officer or agent of a bank from receiving a deposit, knowing the bank to be insolvent, is not violative of Const. art. 1, sec. 8, in that it does not apply to national banks, since such banks are not subject to State regulation. (*Post. p.* 410.)

Cases cited and approved: Easton v. Iowa, 188 U. S., 220; Ex parte Pittman, 31 Nev., 43.

6. **CONSTITUTIONAL LAW.** Imprisonment for debt. Receiving deposit in bank while insolvent.

Acts 1911, ch. 44, making it an offense to receive a deposit in a bank, knowing it to be insolvent, is not violative of Const. art. 1, sec. 18, in that it creates liability to imprisonment for debt. (*Post, pp.* 410, 411.)

---

FROM ANDERSON.

---

Appeal from the Criminal and Law Court of Anderson County.—XEN HICKS, Judge.

FOWLER & FOWLER, JEROME TEMPLETON, SAWYER & UNDERWOOD and BURNETT & WALLACE, for appellant.

FRANK M. THOMPSON, attorney-general, for the State.

MR. JUSTICE GREEN delivered the opinion of the Court.

Willis was indicted in this case for the illegal reception of a deposit while acting as cashier of Knoxville Banking & Trust Company; the indictment being founded on chapter 44 of the Acts of 1911.

The indictment is as follows:

"The grand jurors of the State of Tennessee, upon their oaths do present that W. W. Willis, heretofore, to wit, on or about the 13th day of December, 1912, in the State and county aforesaid, being an officer, to wit, cashier of Knoxville Banking & Trust Company, a corporation, and as such officer having the management and control of said Knoxville Banking & Trust Company, did on the 13th day of December, 1912, feloniously receive, assent to the reception of and permit the reception of twelve hundred, ninety-nine dollars and eleven cents, good and lawful money of the United States, the kind and denomination of same being to the grand jurors unknown of the value of twelve hundred, ninety-nine dollars and eleven cents, on deposit in said bank and corporation. The money having been deposited by the J. H. Webb Company, a corporation, on said date, and the said defendant, at the time of said deposit, then and there knew and had good reason to believe that said bank was insolvent, against the peace and dignity of the State."

The grounds of demurrer were interposed to this indictment that were contained in the demurrer filed in *State* v. *W. W. Willis* (No. 1 Anderson Criminal), 170 S. W., 1032. The trial judge overruled all of these

grounds of demurrer, except the fifth, which was in these words:

"It is not alleged in the indictment that the defendant had control and management of a bank, or that the Knoxville Banking & Trust Company, of which the defendant is alleged to have had control and management, was a banking institution."

This point made by the demurrer was fully considered in the case of *State* v. *W. W. Willis* (Anderson Criminal No. 1). In that case the demurrer was held good. The indictment in this case, however, is different from that considered in No. 1, for in this case it is averred that the defendant did "feloniously receive, assent to the reception of and permit the reception of twelve hundred, ninety-nine dollars and eleven cents, good and lawful money of the United States, the kind and denomination of same being to the grand jurors unknown of the value of twelve hundred, ninety-nine dollars and eleven cents, *on deposit in said bank and corporation.*"

It will be noticed that the indictment in the present case characterizes, by the language above italicized, Knoxville Banking & Trust Company as a bank, and the indictment herein is therefore not open to the criticism directed at the indictment in *State* v. *W. W. Willis* (No. 1 Anderson Criminal). This reference to the defunct institution as a bank meets the objection made to the indictment herein, and the trial judge was therefore in error in sustaining the fifth ground of demurrer.

The defendant Willis undertakes to avail himself here of several grounds of demurrer which the trial judge overruled. We are unable, however, to consider these objections, inasmuch as Willis did not take any exception to the judgment below.

An appeal from a law court is not like a broad appeal in chancery. It is only an appeal in error. It does not vacate, but merely suspends, the judgment of the court. No errors can be corrected in this court except those committed against the party prosecuting the appeal in error or writ of error. Only the State has appealed from the judgment here under consideration. *Jones* v. *Ducktown, etc., Co.,* 109 Tenn., 375, 383, 71 S. W., 821; *Gallena* v. *Sudheimer et al.,* 9 Heisk., 189, 192.

The defendant Willis also urges certain constitutional objections to the act of 1911, and these we will consider.

It is contended that this act violates section 8 of article 1 of the constitution of Tennessee, in that it attempts an unreasonable and arbitrary classification in two respects:

"(1) Its provisions apply to officers and agents having control or management of a bank's affairs, but do not apply to other officers and agents doing precisely the same thing; and (2) it was intended to prevent the reception of deposits by insolvent concerns but applies only to a fraction of the institutions authorized to receive deposits."

This argument is founded on the assumption that the word "bank" as used in chapter 44, Acts of 1911, applies only to strictly banking institutions incorporated under the State laws. It is said that it does not apply to savings banks, trust companies, private banks, or any other institution authorized to receive moneys in trust or otherwise. It is, accordingly, contended that an illegal discrimination is thus made against the managing officers and agents of banks and in favor of such officers and agents controlling savings banks, trust companies, private banks, and the like.

Some cases are referred to from other jurisdictions in which the word "bank" is given a very restricted meaning. It is not necessary to consider the propriety of these decisions, for we are not able to attach to the word "bank," as used in our statute, any such narrow definition.

The purpose of chapter 44 of the Acts of 1911 obviously was to protect depositors. It was intended to protect all depositors, whether they placed their moneys in banks, savings banks, trust companies, or private banks. The general assembly, we think, intended to legislate in regard to all institutions within its jurisdiction that received deposits, and the word "bank," as used in this act, was intended to include all such institutions.

In the general banking act, enacted at the next session of the legislature, being chapter 20 of the Acts of 1913, section 44, it reads as follows:

"The term or word 'bank' or 'banks' or 'banker' as used in this act, wherever it may occur in any part thereof, shall signify, mean, cover, and include every trust company, loan company, mortgage security company, safe deposit company receiving money on deposit, and every individual, firm, or corporation, association, or company doing a banking, loan, or discount business and receiving money on deposit and performing functions of a bank."

The section of the act of 1913, just quoted, may be taken as a contemporary legislative construction of the meaning of the word "bank," as used by our legislators in recent times. Such was the meaning and scope it was intended to have in the act of 1911.

The purpose of the act of 1911 being to protect depositors, and there being no reason to distinguish among depositors of banks, savings banks, and trust companies and private banks, we must assume that the legislature intended the act for the protection of them all. Such being the case, the word "bank" must be given a meaning broad enough to effectuate the intention of the lawmakers. When the intent of a statute is clear, general words will be expanded to effectuate that purpose, if necessary. *Coal Creek, etc., Co.* v. *Tenn. Coal, etc., R. Co.*, 106 Tenn., 651, 62 S. W., 162; *Rose* v. *Wortham*, 95 Tenn., 505, 32 S. W., 458, 30 L. R. A., 609; Lewis, Sutherland, Stat. Const., sec. 347.

Banks, as above defined, or institutions receiving deposits, naturally fall into a class by themselves in many respects. Legislation affecting banks alone,

therefore, and having no reference to other business enterprises, makes a proper classification. *Ex parte Pittman*, as reported in 31 Nev., 43, 99 Pac., 700, 20 Ann. Cas., 1319, and cases in note thereto.

It is no objection to chapter 44 of the Acts of 1911 that it cannot be held to apply to national banks. Under the holding of the supreme court in *Easton* v. *Iowa*, 188 U. S., 220, 23 Sup. Ct., 288, 47 L. Ed., 452, national banks are not subject to State regulation. They are in a sense extraterritorial, and beyond the jurisdiction of the legislature.

For the reasons just set out, we are of opinion that chapter 44 of the Acts of 1911 is not in conflict with the provisions of the fourteenth amendment to the constitution of the United States.

It is further argued that chapter 44 of the Acts of 1911 violates article 1, sec. 18, of the constitution, in that it creates liability for imprisonment for debt.

There is nothing in this contention. This act ordains a new offense. By its provisions, the reception of deposits by certain persons under certain circumstances is made a crime. It does not undertake to impose imprisonment for debt, but it makes the reception of deposit, or the incurring of a debt under certain circumstances a fraud or offense, and it is this offense which is denounced. Such legislation is clearly within the competency of the legislature, and such authority has been exercised in instances too frequent to be mentioned.

State v. Willis.

As heretofore noted, the defendant Willis is not in a position to rely on his other assignments of error made to the judgment of the lower court; he having prosecuted no writ of error or appeal in error from this judgment.

Let the judgment be reversed, and the case remanded.