ALEX YARBROUGH *et al. v.* MACK YARBROUGH.*

(*Nashville.* December Term, 1924.)

1. **APPEAL AND ERROR.** Only errors against party prosecuting appeal in error in law case corrected.

   On appeal in error in law case, such as ejectment, supreme court can only correct errors against party prosecuting appeal. (*Post, pp.* 226, 227.)

   Case cited and approved: State v. Willis, 130 Tenn., 403.

2. **DEEDS.** Estate in ''fee simple upon special limitation,'' or ''fee determinable,'' defined.

   Estate in fee simple on special limitation, or fee determinable, is estate limited to grantee and his heirs until happening of some uncertain, future event, created by words of limitation, as distinguished from words of condition. (*Post, pp.* 227, 228.)

   Cases cited and approved: Overton v. Lea, 108 Tenn., 505; Lumsden v. Payne, 120 Tenn., 407.

3. **DEEDS.** Estate reverts at end of determinable fee, but no possibility of reverter remains in grantor of determinable fee, with limitation of fee absolute thereafter.

   When determinable fee ends, estate reverts to grantor and his heirs, possibility of reverter remaining in grantor; but by limiting fee absolute after determinable fee, grantor parts with all his estate,

   *On character of estate created by grant, lease, or devise of property to person so long as he shall desire to live upon it or devote it to a particular use, see note in 21 L. R. A. (N. S.), 575.

   On effect or rules against perpetuities on enforcement of general bequest for charity or religion, see note in 14 L. R. A. (N. S.), 66.

Yarbrough v. Yarbrough.

and no reversion, or possibility of reverter, remains in him. (*Post*, *pp.* 228, 229.)

4. **DEEDS.** Re-entry necessary to terminate estate on condition; "estate upon condition," and "estate upon conditional limitation" distinguished.

To defeat "estate upon condition," some act, such as making entry, must be done, but happening of specified event itself terminates "estate upon conditional limitation," and estate thereupon goes at once to grantor by reverter, or to person to whom limited on happening of such contingency. (*Post*, *pp.* 229-231.)

Case cited and approved; Brattle Square Church v. Grant, 3 Gray (Mass.), 142.

Case cited and distinguished: Fowlkes v. Wagoner, 46 S. W., 586.

5. **PERPETUITIES.** Deed of land for church purposes held to create void limitation over.

Deed of land to trustees for church purposes, "to revert back to the original tract of land," when no longer so used, though read as in favor of owner of original tract, *held* to create limitation over or conditional limitation, on cessation of use for church purposes, in violation of rule against perpetuities. (*Post*, *pp.* 231-233.)

6. **PERPETUITIES.** "Rule against perpetuities" stated.

The rule against perpetuities is that executory limitations of realty or personalty, to be valid, must vest in interest, if at all, within a life or lives in being, and twenty-one years, and a fraction thereafter for term of gestation in cases of posthumous birth. (*Post*, *pp.* 231-233.)

Case cited and distinguished: Eager v. McCoy, 143 Tenn., 693.

7. **PERPETUITIES.** Preceding estate unaffected by void limitation.

Preceding estate is unaffected by void limitation over. (*Post*, *p.* 233.)

Case cited and approved: First Universalist Society v. Boland, 155 Mass., 171.

8. **DEEDS.** Deed creating determinable fee, held on termination of such fee to revert to grantor.

Where grantor conveyed a lot to trustees for church purposes, "to revert back to the original tract of land" when no longer so used,

Yarbrough v. Yarbrough.

such conditional limitation being void for remoteness, a deed conveying the original tract did not create a conditional limitation in favor of grantee of such deed, but lot reverted to original grantor, or to his grantee, of deed to lot made after the reversion. (*Post,* pp. 233, 234.)

9. DEEDS. Possibility of reverter not assignable.

Possibility of reverter is not assignable. (*Post, p.* 234.)

Case cited and approved: Board of Education of Humphries Co. v. Baker, 124 Tenn., 39.

*Headnotes 1. Appeal and Error, 4 C. J., section 2598; 2. Deeds, 18 C. J., section 281; 3. Deeds, 18 C. J., section 281. 4. Deeds, 18 C. J., sections 281, 442; 5. Perpetuities, 30 Cyc., p. 1479; 6. Perpetuities, 30 Cyc., p. 1482; 7. Perpetuities, 30 Cyc., p. 1482 (1926 Anno). 8. Deeds, 18 C. J., section 281; 9. Estates, 21 C. J., section 180.

FROM MONTGOMERY.

Appeal from the Circuit Court of Montgomery County. —Hon. J. D. G. Morton, Judge.

John S. Daniel, for plaintiffs.

A. R. Gholson, for defendant.

Mr. Chief Justice Green delivered the opinion of the Court.

This is an ejectment suit to recover a small parcel of land in Montgomery county, tried before the circuit judge without a jury. There was a judgment below for defendant, from which the plaintiffs appealed in error to this court.

The facts are not in dispute. Prior to July 28, 1905, Alex Yarbrough was the owner of a farm of three hun-

dred eighty-eight acres known as the B. W. Ussery home place. On July 28, 1905, he conveyed one acre of this land to certain trustees, by deed as follows:

"For the purpose of public worship, I, Alex Yarbrough, have this day donated and do hereby transfer and convey to J. W. Morrison, Mac McCarter and Presley Williams, trustees and their successors in office from time to time the following described tract of real estate lying and being in the 17th district of Montgomery county, Tennessee, and bounded as follows, to-wit:

Here description follows.

"The purpose of this conveyance is for the erection of a Baptist church to be held in trust by said trustees for the use of the membership and community at large for church purposes. So long as used for this purpose hereinabove stated and when no longer used as such the same is to revert back to the original tract of land.

"To have and to hold said land and every part of the same together with all improvements and appurtenances thereto belonging unto said Trustees and their successors in office so long as used for the purposes hereinabove stated."

The deed concludes with the usual covenants, and was duly executed and acknowledged.

After this conveyance to the trustees, a church seems to have been erected on the lot, and the edifice was used for religious worship for a number of years. About January 1, 1918, the use of this church was discontinued. The congregation built another church house, and held their worship in the new building.

On April 5, 1913, plaintiff Alex Yarbrough conveyed to Huggins and wife fifty-one acres of his farm. This fifty-one acres surrounded on the three sides the lot previously

conveyed to the trustees of the church, the fourth side of the church lot fronting on the road. In the deed of Alex Yarbrough to Huggins and wife the land was referred to as "containing by estimation fifty-one acres be it the same, more or less, including and excluding one acre deeded for a church."

On January 20, 1914, Huggins and wife conveyed the same fifty-one acres to the defendant Mack Yarbrough, and the deed of Huggins and wife followed the description of their deed from Alex Yarbrough, and excepted the one acre deeded for a church.

On February 19, 1919, after they had ceased to use this church as a place of worship, certain trustees and members of the said church executed a paper writing by which they agreed "to disband our church and go to the new building erected between Lone Oak and Louise known as the Immanuel Baptist Church." This paper contained also the following provision:

"We further covenant together and agree to give over to Mack Yarbrough our lot and improvements there, as they were to revert back to the original tract of land. Was so provided for in deed made to us by Alex Yarbrough."

Plaintiff Alex Yarbrough made conveyances from time to time of small portions of his original tract of three hundred eighty-eight acres, and in 1920, after the church had moved and had undertaken to transfer the church lot to defendant, Mack Yarbrough, plaintiff Alex Yarbrough conveyed the remainder of his original tract to his coplaintiffs, Huggins and wife, by a deed which it is conceded was sufficient to carry title to the one-acre church lot, if title to that lot had reverted to plaintiff

Alex Yarbrough, and was in him when he made said deed to Huggins and wife.

This suit, as has been gathered, is by Alex Yarbrough and Huggins and wife, for the use of Huggins and wife, to recover from Mack Yarbrough the one-acre parcel of land formerly conveyed to the trustees of the church by Alex Yarbrough. When the church abandoned· the lot, and when the trustees and members executed the paper above referred to in favor of defendant Mack Yarbrough, he went into possession of· the premises, and was in possession at the time of this suit.

The case obviously depends upon a proper construction of the deed of Alex Yarbrough to the trustees of the church, and a determination of the rights of the parties under such deed.

The contention of the plaintiffs is that the trustees of the church under this deed took an estate upon condition, or an estate upon special limitation; that if the estate was upon condition, the condition was broken when the trustees ceased to use the premises for church purposes and that the plaintiff, the grantor, was entitled to enter for condition broken; that if the estate was upon special limitation, the trustees took a determinable fee; that the continuance of this estate depended upon the use of the property for church purposes; and that when such use ended the estate expired by its own limitation, and the title reverted to the grantor.

Several defenses were made in the trial court, but all of them were rejected by the circuit judge except one. These defenses, overruled by the trial judge, are also relied on in this court. Such defenses, however, are not available here. This is a law case, and the case is here

by appeal in error, and not on a broad appeal in equity which would open up the entire case. Upon this appeal in error we can only correct errors committed against the party prosecuting the appeal in error. *State* v. *Willis*, 130 Tenn., 403, 170 S. W., 1030, and cases cited.

The trial judge was of opinion that the true meaning of the deed of Alex Yarbrough to the trustees of the church was, that when the land in controversy was abandoned for church purposes, it passed to the owner of that part of the original tract from which it was taken; that, as defendant Mack Yarbrough owned that portion of the original tract out of which this one-acre lot was carved, said one-acre lot passed to him. In other words, the trial judge treated the deed to the trustees as creating a conditional limitation in favor of the owner of that part of the original tract out of which the church lot was carved.

We think the language of the deed before us was not designed to create a bare fee determinable. The conveyance was to the trustees of the Baptist Church for church purposes, "so long as used for this purpose hereinabove stated, and, when no longer used as such, the same is to revert back to the original tract of land."

An estate in fee simple upon special limitation, as counsel and some of the books call it, or a fee determinable, is thus defined:

"When an estate in fee simple is made subject to a special limitation it is known as a determinable or qualified fee. Such as estate is an estate limited to the grantee and his heirs until the happening of some future event, which must be of such a kind that it may by possibility never happen at all; it is an estate whose continu-

ance as a fee simple is made to depend upon the happening or not happening of some future event, but where the terms used in its creation are words of limitation, as distinguished from words of condition.

"Old examples of determinable fees are limitations to one and his heirs 'as long as the Church of St. Paul shall stand,' or 'until the grantee go to Rome;' the most appropriate words to create a determinable fee being, during, so long as, till, until, whilst, etc., such words fitly prefacing a limitation. . . .

"For example, where the grant was to a religious society, 'To have and to hold to the said (society) and their assigns, so long as said real estate shall by said society or its assigns be devoted to the uses, interests and support of those doctrines of the Christian religion,' set forth in a certain formulary, it was held to create a determinable fee, terminating without entry and reverting to the grantor when the use specified ceased." Brewster on Conveyancing, section 173 et seq.

Other illustrations will be found in Washburn on Real Property, sections 167, 169, 170. Such estates are fully recognized in this jurisdiction. *Overton* v. *Lea,* 108 Tenn., 505, 68 S. W., 250, and *Lumsden* v. *Payne,* 120 Tenn., 407, 114 S. W., 483, 21 L. R. A. (N. S.), 605.

It will be noted that the grant here was not merely to the trustees so long as the property was used for church purposes, but, on the determination of this period, there was a limitation over in favor of "the (owner of) the original tract of land." The limitation over in favor of the third person destroys the idea that it was the intention of the grantor to create simply a determinable fee in these trustees. When a determinable fee ends, the

estate reverts to the grantor and his heirs. In conveying such an estate there remains in the grantor the reversion, or rather the possibility of a reverter. When the grantor conveys a determinable fee, and limits after it a fee absolute, he parts with all his estate, and there is no reversion or possibility of a reverter remaining in him. Such appears to have been the design of the grantor in this deed.

There remains the question as to whether the estate attempted to be created by the conveyance before us was an estate upon condition or an estate upon conditional limitation.

The distinction between an estate upon condition and a conditional limitation is thus drawn by Mr. Washburn:

"In this and many other respects, an estate upon condition, properly speaking, differs from what is known as a conditional limitation. In either case, the estate is a conditional one. But in the one, though the event happen upon which the estate may be defeated it requires some act to be done, such as making an entry, in order to effect this. In the other, the happening of the event is, in itself, the limit beyond which the estate no longer exists, but is determined by the operation of the law, without requiring any act to be done by any one. In case of a condition at common law, the grantor or his heirs alone can defeat the estate by entry for condition broken. In a conditional limitation, the estate determines, *ipso facto,* upon the happening of the event, and goes over at once to the grantor by reverter, or to the person to whom it is limited upon the happening of such contingency." Washburn on Real Property (6th Ed.), section 970.

To the same effect see 4 Kent Com., pp. 126, 127.

The distinction between a condition and a conditional limitation is nowhere more clearly stated than by BIGE-LOW, J., in *Brattle Square Church* v. *Grant,* 3 Gray (Mass.), 142, 63 Am. Dec., 725, which language is quoted and adopted in *Fowlkes* v. *Wagoner* (Tenn. Ch. App.), 46 S. W., 586, as follows:

"By the common law, a condition annexed to real estate could be reserved only to the grantor or devisor and his heirs. Upon a breach of the condition, the estate of the grantee or devisee was not *ipso facto* terminated, but the law permitted it to continue beyond the time when the contingency upon which it was given or granted happened, and until an entry or claim was made by the grantor or his heirs, or the heirs of the devisor, who alone had the right to take advantage of a breach. 2 Bl. Comm., 156; 4 Kent, Comm. (6th Ed.), 122, 127. Hence arose the distinction between a condition and a conditional limitation. A condition, followed by a limitation over to a third person in case the condition be not fulfilled, or there be a breach of it, is termed a 'conditional limitation.' A condition determines an estate after breach, upon entry or claim by the grantor or his heirs, or the heirs of the devisor. A limitation marks the period which determines the estate, without any act on the part of him who has the next expectant interest. Upon the happening of the prescribed contingency, the estate first limited comes at once to an end, and the subsequent estate arises. If it were otherwise, it would be in the power of the heir to defeat the limitation over, by neglecting or refusing to enter for breach of the condition. This distinction was originally introduced in the case of

wills, to get rid of the embarrassment arising from the rule of the ancient common law, that an estate could not be limited to a stranger upon an event which went to abridge or destroy an estate previously limited. A conditional limitation is therefore of a mixed nature, partaking both of a condition and of a limitation; of a condition, because it defeats the estate previously limited; and of a limitation, because, upon the happening of the contingency, the estate passes to the person having the next expectant interest, without entry or claim.''

Bearing in mind the language used in the deed before us, and testing it by the rules above laid down, it seems obvious that the intention of the grantor was to create a limitation over in favor of a third person, upon the cessation of the use of this property for church purposes. In other words, a conditional limitation was attempted. Although it may be assumed for the purposes of this case that the limitation over in favor of ''the original tract of land'' should be read as in favor of the owner of the original tract of land, and although we assume that this is a sufficient description of a grantee under a deed, nevertheless we think the limitation over must fail since it is in plain violation of the rule against perpetuities. That rule is thus stated:

''. . . Executory limitations, whether of real or personal estate, in order to be valid, must vest in interest, if at all, within a life or lives in being and twenty-one years and a fraction thereafter, for the term of gestation in cases of posthumous birth.'' *Eager* v. *McCoy,* 143 Tenn., 693, 228 S. W., 709, and cases cited.

Referring again to *Fowlkes* v. *Wagoner,* supra, it is there said:

"One material difference, therefore, between an estate in fee on condition and on a conditional limitation is, briefly, this: That the former leaves in the grantor a vested right, which, by its very nature, is reserved to him, as a present existing interest, transmissible to his heirs; while the latter passes the whole interest of the grantor at once, and creates an estate to arise and vest in a third person, upon a contingency, at a future and uncertain period of time. A grant of a fee on condition only creates an estate of a base or determinable nature in the grantee, leaving the right or possibility of reverter vested in the grantor. Such an interest or right in the grantor, as it does not arise and take effect upon a future uncertain or remote contingency, is not liable to the objection of violating the rule against perpetuities in the same degree with other conditional and contingent interests in real estate of an executory charter. The possibility of reverter, being a vested interest in real property, is capable at all times of being released to the person holding the estate on condition, or his grantee, and, if so released, vests an absolute and indefeasible title thereto. The grant or devise of a fee on condition does not, therefore, fetter and tie up estates, so as to prevent their alienation, and thus contravene the policy of the law which aims to secure the free and unembarrassed disposition of real property. It is otherwise with gifts or grants of estates in fee, with limitations over upon a condition or event of an uncertain or indeterminate nature. The limitation over being executory, and depending upon a condition, or an event which may never happen, passes no vested interest or estate. It is impossible to ascertain in whom the ultimate right to

the estate may vest, or whether it will ever vest at all, and therefore no conveyance or mode of alienation can pass an absolute title, because it is wholly uncertain in whom the estate will vest on the happening of the event or breach of the condition upon which the ulterior gift is to take effect.''

The foregoing language is also taken from the opinion of the Massachusetts court in *Brattle Square Church* v. *Grant,* supra.

The limitation over in the deed before us rested upon a condition or event altogether uncertain and indeterminate. It was possible that the property conveyed might have been used for church purposes indefinitely; that the limitation over might never have vested. Therefore, such conditional limitation must be held void for remoteness.

Where there is an invalid limitation over, the general rule is that the preceding estate stands unaffected by the void limitation. *First Universalist Society* v. *Boland,* 155 Mass., 171, 29 N. E., 524, 15 L. R. A., 231; Lewis on Perpetuities, 657.

The preceding estate here; that is, the grant to the trustees, though not so designed, becomes a determinable fee, laying aside, as we must do, the limitation over. This preceding estate was to endure only so long as the land was used for church purposes. When the use of the land for church purposes was abandoned, the limitation over being void, there was a reversion to the grantor. ·

*First Universalist Society* v. *Boland,* supra, is directly in point. There was a grant there to a religious society so long as the land should be devoted by said society to

the uses, interests, and support of specified doctrines of the Christian religion, and a limitation over was attempted, upon the diversion by such society of said land to other interests, uses or purposes. The limitation over was held void for remoteness, and the preceding estate having determined, it was held that there was a reversion to the original grantor. It is further held that the possibility of reverter in such a grantor, after such a conveyance, was not invalid for remoteness.

From a consideration of these authorities we reach the conclusion that the trial judge was in error in dismissing plaintiff's suit. The estate in the trustees of the church was determinable, and the limitation over in favor of the owner of the original tract being void for remoteness, the land reverted to the plaintiff Alex Yarbrough. He could not have conveyed his possibility of reverter to Mack Yarbrough, because such an interest is not assignable. *Board of Education of Humphries County* v. *Baker,* 124 Tenn., 39, 134 S. W., 863. After the reversion, Alex Yarbrough conveyed to his coplaintiffs Huggins and wife. Huggins and wife are, therefore, entitled to recover the land.

The judgment below will be reversed, and a judgment will be entered here in favor of Huggins and wife. Alex Yarbrough has no interest, and is only a nominal party to the suit. The defendant Mack Yarbrough will pay the costs.